■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH MONDELLO, Appellant. [594 NYS2d 287] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Owens, J.), rendered June 11, 1990, convicting him of riot in the first degree, unlawful imprisonment in the first degree (three counts), discrimination (four counts), menacing (three counts), and criminal possession of a weapon in the fourth degree, upon a jury verdict, and sentencing him to four consecutive terms of 1⅓ to 4 years imprisonment for the riot in the first degree and unlawful imprisonment in the first degree convictions, concurrent terms of 90 days imprisonment for each of the three counts of menacing, and one year imprisonment for each of the four counts of discrimination and criminal possession of a weapon in the fourth degree. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements he made to the police.

Ordered that the judgment is modified, on the law, by providing that the term of imprisonment imposed for riot in the first degree shall be served concurrently with each of the consecutive terms of imprisonment imposed for the convictions of unlawful imprisonment in the first degree (three counts); as so modified, the judgment is affirmed.

We disagree with the defendant's contention that the court committed a reversible error in denying his peremptory challenge to a black juror (Juror No. 2). It was not error for the court to determine that the defendant excused the juror on racially-discriminatory grounds, notwithstanding the defendant's attempt to provide a race-neutral explanation.

It is well established that purposeful racial discrimination by criminal defendants and their counsel in the exercise of peremptory challenges is prohibited under the New York State and Federal Constitutions (see, People v Kern, 75 NY2d 638, cert denied 498 US 824; Georgia v McCollum, 505 US —, 112 S Ct 2348; see generally, Batson v Kentucky, 476 US 79). Before peremptorily challenging the juror in issue, the defendant had peremptorily challenged all but one of the available black prospective jurors, while peremptorily challenging no individuals of any other race. There was, thus, a prima facie showing of discrimination (cf., People v Childress, 81 NY2d 263). When the court asked the defense counsel for a race-neutral reason for peremptorily challenging Juror No. 2, the defense counsel responded that he did not like that prospec-

tive juror, and gave entirely subjective impressions. He resisted the obligation to give race-neutral reasons and asserted that his peremptory challenge was merely a response or quid pro quo to what he characterized as the prosecutor's racially-motivated peremptory challenges. When the court continued to press the defense counsel for a race-neutral reason to support this peremptory challenge of Juror No. 2, the defense counsel eventually responded that he did not want that juror because he thought that the juror would be influenced by the publicity of the case. The record does not support any valid claim that the juror would be influenced by media accounts. The juror did acknowledge that he was aware of media accounts, but his comments cannot be fairly interpreted to justify any belief that he could not render a fair and proper verdict.

It is for the trial court to determine if a race-neutral explanation for challenging a juror is a mere pretext, and the resolution of this issue by the trial court is entitled to great deference *(see, People v Hernandez,* 75 NY2d 350, *affd* 500 US —, 111 S Ct 1859; *People v Green,* 181 AD2d 693). We find no basis to interfere with the trial court's finding that counsel's proffered excuse was a pretext offered in an attempt to cover a racially-discriminatory intent. Accordingly, the court did not err in seating Juror No. 2 over the defendant's objection.

The defendant's contention that his statement should have been suppressed as the fruits of his alleged illegal seizure is without merit. The general rule is that "an officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others * * * Where an immediate frisk is not feasible, however, the officer will be justified in approaching the suspect with weapon drawn or at the ready * * * The key question in all cases remains whether the protective measures taken by the officer were reasonable under the circumstances" *(People v Finlayson,* 76 AD2d 670, 678-679, *cert denied* 450 US 931). At bar, the arresting detective acted reasonably when he approached the defendant with his gun drawn, since the defendant was in bed with his hands under the sheets, and the detective knew that at least one of the perpetrators of the crime under investigation was armed and dangerous *(see, People v Hardy,* 146 AD2d 800; *People v Chestnut,* 51 NY2d 14, *cert denied* 449 US 1018). Moreover, although the detective began to handcuff the defendant, when his partner appeared in the apartment the detective put his handcuffs away. The defendant voluntarily agreed to accom-

pany the detectives to the station house, and the police had no objection to the defendant's girlfriend accompanying the defendant. Because the defendant did not want the media people who were on the next block to see him, the detectives went to their car which was parked across the street, leaving the defendant and his girlfriend some distance away. The police then opened the doors and the defendant and his girlfriend ran into the car. In all, we find no basis to overturn the hearing court's factual conclusion that the defendant was not under arrest when he made his statement at the station house, preceded by proper *Miranda* warnings.

We find that the sentence imposed was not excessive. However, the one count of riot in the first degree, as narrowly defined, without objection, by the court in its charge to the jury, was essentially the same crime as the three separate counts of unlawful imprisonment in the first degree. Accordingly, the term of imprisonment imposed for riot in the first degree should run concurrent to the terms of imprisonment imposed for unlawful imprisonment in the first degree *(see,* Penal Law § 70.25 [2]). The court properly imposed consecutive terms of imprisonment on the defendant for the three unlawful imprisonment counts, because by separate acts undertaken by various groupings of the defendant and his accomplices, each of the three victims was individually separated and restrained *(see, People v Brathwaite,* 63 NY2d 839).

We have considered the defendant's remaining contentions and find that they are unpreserved for appellate review, without merit, or do not warrant reversal of the judgment of conviction. Mangano, P. J., Rosenblatt, Ritter and Santucci, JJ., concur.