[615 NYS2d 904]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN DIXON, Appellant.

Second Department, August 15, 1994

13

### APPEARANCES OF COUNSEL

*Kevin Dixon, pro se,* and *Philip L. Weinstein,* New York City *(Steven M. Statsinger* and *Richard Joselson* of counsel), for Kevin Dixon, appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Jay M. Cohen* and *Eugene Lopez* of counsel), for respondent.

### OPINION OF THE COURT

BRACKEN, J. P.

In a criminal case, neither the prosecutor nor the attorney for the defendant may, through the exercise of peremptory challenges, seek to exclude the members of a "cognizable group" from the jury which is ultimately to be selected and which is ultimately to decide the defendant's fate *(see, Batson v Kentucky,* 476 US 79; *Georgia v McCollum,* 505 US —, 112 S Ct 2348; *People v Kern,* 75 NY2d 638). Women comprise a cognizable group for purposes of applying the *Batson* rule *(see, J. E. B. v T. B.,* 511 US —, 114 S Ct 1419; *see also, People v Irizarry,* 165 AD2d 715; *People v Blunt,* 162 AD2d 86; *People v Campanella,* 176 AD2d 813). Once a prima facie case is made that an attorney is attempting to exclude a cognizable group, the attorney will be called upon to articulate nondiscriminatory explanations for the peremptory challenges which he or she has exercised, and the court must then decide whether such explanations are sincere or merely pretextual *(see, Hernandez v New York,* 500 US 352, *affg* 75 NY2d 350; *People v Jenkins,* 75 NY2d 550, 556; *People v Simmons,* 79 NY2d 1013; *People v Brooks,* 79 NY2d 1043, *cert denied* — US —, 113 S Ct 282). The central question before us on this appeal is whether, given the prevalence of crime in our cities, the fact that a prospective juror is himself or herself the victim of a crime should ordinarily be regarded as a legitimate, rather than as a

pretextual, basis for the defendant's exercise of his or her peremptory challenges after a prima facie showing of discrimination has been made. The defendant argues that the trial court's erroneous application of the *Batson* doctrine deprived him of his statutory right to exercise peremptory challenges. For the following reasons, we agree.

In this case, the attorney for the defendant exercised a total of 10 peremptory challenges against prospective jurors who were women. Six of these challenges occurred during the first round of jury selection and four occurred during the second. Having determined the existence of a discriminatory pattern, the trial court called upon the defendant's attorney to provide "gender-neutral" explanations of these challenges. The following are in summary fashion the explanations which the defendant's attorney then provided.

The defense counsel noted, first, that prospective juror number one (round one) had stated that her brother had been "mugged". The prosecutor responded by pointing out that this mugging incident had occurred 10 years ago.

Next, the defense counsel stated that prospective juror number two (round one) had said that her son was employed in the Department of Correction and that she herself had been the victim of a burglary. The prosecutor responded by arguing, *inter alia,* that the employment of the prospective juror's son was irrelevant. The prosecutor also argued that this prospective juror, as well as prospective juror number one, had both indicated that they would be fair.

Although juror number three (round one) had advised that she had been the victim of a burglary, the defense counsel did not explain his peremptory challenge on this basis. The defense counsel stated that he did not like this juror's answers to various questions in general.

Proceeding to prospective juror number five (round one), the defense counsel asserted that, to him, this female prospective juror lacked the strength to "stand her ground". As a matter of fact, this prospective juror also claimed that her brother had been mugged; however, in offering his "gender-neutral" explanation, the defendant's attorney failed to note this fact. The prosecutor argued that the attorney's explanation for his challenge was "not sufficient".

The defense counsel next stated that prospective juror number thirteen (round one) had been a token booth clerk who might be biased against the defendant, who allegedly commit-

ted this crime in the subway. The prosecutor argued that this prospective juror's former employment was irrelevant.

The defendant's attorney next stated that prospective juror number fourteen (round one) had had prior criminal jury experience. The prosecutor argued that the real reason for defense counsel's exercise of a peremptory challenge was that this prospective juror was of the same age and gender as the complaining witness.

With respect to round two of the jury selection process, the defense counsel asserted that the peremptory challenge exercised with respect to prospective juror number three was prompted by the fact that this juror's husband had been mugged. This prospective juror's nephew was employed in the Department of Correction and the prospective juror had stated that she used to discuss his work with him.

The defendant's attorney next averred that prospective juror number four (round two) had said that she had been the victim of a robbery and an assault. This prospective juror also claimed to have a brother and several friends who were employed in the Police Department.

The defendant's attorney next pointed out that prospective juror number seven (round two) had expressed a belief that a person would not have been arrested if he had not committed a crime. Counsel also pointed out that he had unsuccessfully attempted to exercise a challenge "for cause" with respect to this juror.

Finally, the defense counsel noted that the sister of juror number eight (round two) had been robbed at gunpoint. Counsel also claimed that the trial court had not permitted him to conduct a "proper voir dire" as to this juror and that he therefore "had no sense of whether or not she would be a fair and impartial juror".

It should also be noted that defense counsel was accused of exercising his peremptory challenges so as to remove whites from the panel. For example, counsel explained his challenge of one white male by noting that this prospective juror had stated that his son had been pistol-whipped and that his mother had been the victim of a robbery and had also been pistol-whipped.

The trial court seated juror number one, juror number three, juror number five, and juror number fourteen in round one and juror number four and juror number eight in round two. Thus, the jury ultimately selected included one robbery

victim, three jurors whose brother or sister had been robbery victims, and one burglary victim. All of these jurors had been challenged peremptorily by the defendant's attorney. The defendant was convicted at the conclusion of the trial. This appeal followed.

As a matter of both Federal and State constitutional law, a defendant's attorney may not exercise peremptory challenges in a purposefully discriminatory way *(see,* US Const 14th Amend; NY Const, art I, § 11; *Georgia v McCollum,* 505 US —, 112 S Ct 2348, *supra; People v Kern,* 75 NY2d 638, *supra; see also, People v Bolling,* 79 NY2d 317; *People v Mondello,* 191 AD2d 462). If *Batson* does not apply, a defendant's right to exercise peremptory challenges remains as unlimited as it was under the earlier case which *Batson (supra)* overruled *(see, Swain v Alabama,* 380 US 202; *cf., People v Thompson,* 79 AD2d 87).

"The right of peremptory challenge given to an accused person is a substantial right * * * [i]t is plain that every statutory provision intended for the benefit of the accused confers a substantial right which cannot be disregarded without his consent".

"Neither the court nor the parties can select the jury except in the way pointed out by the statute" *(People v McQuade,* 110 NY 284, 293-294, 306; *see also, People v Williams,* 26 NY2d 62).

As a matter of State statutory law (CPL 270.25 [2]), the application of the *Batson* doctrine to the defendant must not extend any further than required under the Equal Protection Clauses of the State and Federal Constitutions *(see,* US Const 14th Amend; NY Const, art I, § 11; *Georgia v McCollum,* 505 US —, 112 S Ct 2348, *supra; People v Kern,* 75 NY2d 638, *supra).* To extend the *Batson* doctrine further than necessary, when the party accused of committing a *Batson* violation is the defendant's own attorney, would be to "destroy the ages-old right of criminal defendants to exercise peremptory challenges as they wish, to secure a jury they consider fair" *(Georgia v McCollum,* 505 US, *supra,* at —, 112 S Ct, *supra,* at 2365 [Scalia, J., dissenting]). Thus, unless application of the *Batson* doctrine in this case required the trial court to seat the five jurors noted above, despite the defendant's objection, the judgment appealed from must be reversed.

The deprivation of the defendant's right to exercise five peremptory challenges in this case can be justified under the

*Batson* doctrine only if (1) there was in fact a pattern of purposeful discrimination against prospective jurors who were women, and (2) the "gender-neutral" explanations offered with respect to these jurors were pretextual. Under the circumstances of this case, we may assume that a prima facie case of discrimination was made. This is so because, even assuming that a prima facie case had been made, so as to necessitate the expression of gender-neutral bases for defense counsel's peremptory challenges, such gender-neutral bases were provided as to a majority of the female jurors seated over the defendant's objection, and we find that these gender-neutral bases were not pretextual.

In order to constitute a gender-neutral explanation, the explanation furnished must merely be one in which gender-related considerations play no role; the explanation provided need not amount to one which would justify a challenge "for cause" *(see, Hernandez v New York,* 500 US 352, *supra; see also, People v Peart,* 197 AD2d 599; *People v Duncan,* 177 AD2d 187). The gender-neutral explanation must be reasonably definite; a conclusory assertion of good faith will generally be regarded as inadequate *(see, People v Bolling,* 79 NY2d 317, *supra; People v Jenkins,* 75 NY2d 550, *supra; People v Peart, supra,* at 599; *People v Rodney,* 192 AD2d 626). Also, we have stated that certain purportedly nondiscriminatory explanations will be rejected unless they are "somehow * * * related to the factual circumstances of the case" *(People v Williams,* 199 AD2d 445, 446).

The general rule is that the trial court is in a better position than a reviewing court to evaluate whether a gender-neutral explanation is in fact merely a pretext *(see, Hernandez v New York,* 500 US 352, *supra).* While this Court will thus ordinarily defer to the trial court *(see, e.g., People v Mondello,* 191 AD2d 462, *supra; People v Green,* 181 AD2d 693; *People v Williams,* 176 AD2d 245), the trial court's determination as to whether a gender-neutral explanation is or is not pretextual is not completely insulated from review *(see, e.g., People v Benson,* 184 AD2d 517; *People v Manuel,* 182 AD2d 711).

Prosecutors have been permitted peremptorily to remove potential jurors who belong to a cognizable group with respect to which a prima facie showing of purposeful discrimination has been made, on the grounds that the potential jurors in question were victims of a crime *(see, People v Bennett,* — AD2d —, 1994 NY Slip Op 5997 [2d Dept, July 5, 1994]; *People v Williams,* 176 AD2d 245, *supra; People v Baysden,* 128 AD2d

795), or related to a person or persons who had been accused of a crime *(e.g., People v Craig,* 194 AD2d 687; *People v Richardson,* 193 AD2d 969; *People v Dabbs,* 192 AD2d 932). In our view, any concern about a prospective juror's potential bias is at least as well founded when the prospective juror in question is, or is related to, a crime victim as when the prospective juror in question is related to an accused criminal.

We acknowledge that the unfortunate reality may be, as the prosecutor in this case argued, that "[i]n Brooklyn, you can't swing a dead cat without hitting someone who either themselves or their family hasn't been victimized *[sic]."* However, in our opinion, it does not follow from the fact that crime victims are so numerous that a peremptory challenge based on a potential juror's status as a crime victim is necessarily pretextual.

There is a rational basis for the suspicion that a crime victim might be less sympathetic to an accused criminal than would a person who has never been victimized by crime. Unlike a challenge based on a juror's attire *(cf., People v Bennett,* — AD2d —, *supra)* or a challenge based on a juror's employment status *(cf., People v Williams,* 199 AD2d 445, *supra),* challenges by the defendant based on victimization status are supported by a readily apparent basis in reason. Challenges by the defendant ostensibly based on victimization status are, in other words, not pretextual on their face, and they should not be found to be pretextual in the absence of evidence that they are being applied in a discriminatory manner. In order to establish a discriminatory pattern in the application of challenges by the defendant based on victimization status, it is not sufficient to demonstrate that that status was not uniformly applied to all prospective jurors *(cf., People v Allen,* — AD2d —, 1994 NY Slip Op — [3d Dept, July 14, 1994]). We find that the evidence on this case is not sufficient to support the conclusion that such a discriminatory pattern existed.

For the foregoing reasons, we conclude that the defendant was deprived of his statutory right to exercise peremptory challenges, and a new trial is warranted. We have examined

the defendant's remaining contentions and find them to be without merit.

SULLIVAN, ROSENBLATT and MILLER, JJ., concur.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.