[620 NYS2d 87]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOUGLAS STIFF, Appellant.

Second Department, December 12, 1994

APPEARANCES OF COUNSEL

*Philip L. Weinstein,* New York City *(Daniel Hsiung* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Ruth E. Ross, Charles D. Day* and *Joseph Tucker* of counsel), for respondent.

## OPINION OF THE COURT

COPERTINO, J.

The issue to be decided on this appeal is whether the holding of *Batson v Kentucky* (476 US 79) and, more importantly, the rules of law which have evolved since *Batson,* preclude a criminal defendant from using his peremptory challenges to exclude potential jurors because they do *not* belong to a particular racial group. We conclude that such a practice is improper, and therefore affirm the judgment appealed from.

## I

The defendant, who is black, was indicted for criminal possession of a weapon in the third degree and menacing based on an incident occurring on January 7, 1991, in a subway station passageway. After voir dire examination of the first panel of 16 prospective jurors, the defendant unsuccessfully challenged panelist number four for cause. The defendant then exercised five of his peremptory challenges to exclude panelists two, four, seven, nine, and fourteen. The prosecution voiced a *"Batson* challenge", noting that panelist number two was a white male, number four was an Asian male, number seven was an Hispanic male, number nine was a white female, and number fourteen was an Hispanic female. The defense counsel argued that the challenged panelists were of different sexes, races and nationalities. The court then noted that none of the challenged panelists was black. The court therefore found, prima facie, that the defendant had

exercised his challenges in a racially discriminatory manner to eliminate all but one of the nonblacks from the panel, and required the defendant to provide race-neutral reasons for the challenges.

The defense counsel then indicated that panelist number two, the white male, was challenged because he was employed in a supervisory capacity, and because he had previously served on a civil jury. Counsel was concerned that panelist number two might not fully appreciate the difference between civil and criminal cases. Noting that the defendant had not objected to a black female who had served on a civil jury, the court rejected the reasons as pretextual, and seated panelist number two.

As to panelist number four, an Asian male, counsel argued that his employment as a subway train operator and resulting contact with the New York City Transit Police might taint his objectivity. The court concluded that the explanation was tenuous, but nonetheless allowed the challenge. The court also allowed the defendant's challenge to panelist number seven, an Hispanic male, on the ground that he had initially indicated that he might find a police officer more credible than other witnesses.

Regarding panelist number nine, a white female, counsel argued that her history of employment with New York Telephone, a large, "hierarchal organization", might make her biased in favor of the prosecution. The court rejected counsel's explanation as pretextual. The court then *sua sponte* dismissed panelist fourteen, an Hispanic female, for cause, on the ground that she appeared to have difficulty understanding English.

The remainder of jury selection occurred without incident. After a trial, the jury found the defendant guilty of criminal possession of a weapon in the third degree.* The defendant argues on this appeal, *inter alia,* that the trial court erred in seating panelists two and nine.

## II

We begin with the well-settled rule that prosecutors may not exercise peremptory challenges to exclude prospective jurors on the basis that they and the defendant share the

---

* The second count of the indictment, menacing, was dismissed at the beginning of the trial.

same race *(see, Batson v Kentucky,* 476 US 79, *supra; People v Hernandez,* 75 NY2d 350, *affd* 500 US 352; *People v Scott,* 70 NY2d 420). This rule was subsequently expanded so that a criminal defendant may object to the race-based exclusion of potential jurors, regardless of whether the defendant and the jurors in question are of the same race *(see, Powers v Ohio,* 499 US 400).

The holding of *Batson (supra)* has also been applied to the reverse situation to preclude criminal defendants from using peremptory challenges in a racially discriminatory manner *(see, Georgia v McCollum,* 505 US —, 120 L Ed 2d 33; *People v Kern,* 75 NY2d 638, *cert denied* 498 US 824; *People v Mondello,* 191 AD2d 462). This extrapolation of the *Batson* rule is based on the equal protection guarantees of the United States Constitution *(see, Georgia v McCollum,* 505 US, *supra,* at —, 120 L Ed 2d, *supra,* at 44-48), and on the Equal Protection and Civil Rights Clauses of New York State Constitution, article I, § 11 *(see, People v Kern, supra,* at 650-657). While the holding in *Batson* was primarily intended to protect the rights of the defendant *(see, Batson v Kentucky, supra,* at 86), the Supreme Court also recognized the rights of the jurors themselves *(see, Batson v Kentucky, supra,* at 87). In virtually every variation of the *Batson* situation, i.e., in cases where the defendant and the excluded jurors do not share the same race, the central concern is the right of every citizen to serve on a jury *(see, e.g., Georgia v McCollum,* 505 US, *supra,* at —, 120 L Ed 2d, *supra,* at 44-45; *Powers v Ohio, supra,* at 406-409; *People v Kern, supra,* at 650-654; *see also, Strauder v West Virginia,* 100 US 303). Reduced to their essential terms, these precedents make it clear that no matter what the factual context, neither the prosecution nor the defense can exercise peremptory challenges to exclude prospective jurors based on their race *(see, Georgia v McCollum,* 505 US, *supra,* at —, 20 L Ed 2d, *supra,* at 51; *Powers v Ohio, supra,* at 409; *People v Kern, supra,* at 653, 657).

### III

The case now before us is novel in that while most *Batson* cases involve exclusion of a particular racial group, we are faced with the question of whether it is improper for a defendant to exercise peremptory challenges in a manner which purposefully excludes prospective jurors who do not share the defendant's race. Relying on case law stating that

the issue of whether a prima facie case of discrimination has been made is moot once race-neutral explanations have been offered and the trial court has rendered its ultimate determination *(see, Hernandez v New York,* 500 US 352, 359, *supra; see also, People v Jones,* 204 AD2d 485), the prosecution argues that we need not address the issue of whether a prima facie case of discrimination was established in this case.

We find the cited rule inapplicable in this case. In *Hernandez,* the People did not dispute, neither at the trial court, nor in the New York Court of Appeals, nor in the United States Supreme Court, that the defendant had established a prima facie case of discrimination against persons of Hispanic descent *(see, Hernandez v New York, supra,* at 378 [dissenting opn of Stevens, J.]; *People v Hernandez,* 75 NY2d 350, 356, *supra).* In the closing paragraph of the plurality opinion, Justice Kennedy noted that while it was not error for the New York courts to address whether the defendant established a prima facie case of discrimination, the inquiry was unnecessary, "given the course of proceedings in the trial court" *(Hernandez v New York, supra,* at 372).

Unlike in the *Hernandez* case, the defendant in this case argued in the trial court, and continues to argue before this Court, that the People failed to establish a prima facie case of discrimination. Specifically, the defendant argues that non-blacks are not a "cognizable racial group" within the meaning of *Batson (supra,* at 96). This case is therefore distinguishable from the *Hernandez* case, because the defendant preserved for appellate review the issue of whether the prosecution established a prima facie case of discrimination, and has now raised the issue on appeal. We find that the rule urged by the prosecution is inapplicable here, and conclude that our review of the defendant's argument is not precluded. This result is not inconsistent with our earlier decision in *People v Jones (supra),* since, in that case, the defendant did not dispute the prosecution's prima facie showing of discrimination in the trial court.

### A

The defendant relies on *Batson* and subsequent cases for the argument that peremptory challenges should be rejected only when the challenges show the exclusion of a "cognizable racial group" *(Batson v Kentucky, supra,* at 96; *People v Smith,* 81 NY2d 875, 876; *People v Mathews,* 201 AD2d 588; *People v*

*Figueroa,* 194 AD2d 551). The defendant contends that "non-blacks" are not such a cognizable group. In other words, the defendant argues that it is not improper to exclude all but one single race.

We cannot agree that the law would allow such a conclusion. The requirement that the excluded jurors be members of a cognizable racial group in order for the exclusions to be rejected must be viewed in the context in which it was created. In *Batson,* the defendant challenged the prosecution's exclusion of prospective jurors who were the same race as the defendant. The Supreme Court held that in order to show a prima facie case of purposeful discrimination, the defendant must first show that he or she is a member of a cognizable racial group, that the prosecution exercised peremptory challenges to exclude panelists of the defendant's race, and that the facts and circumstances raise an inference that the prosecution used the peremptory challenges to exclude the panelists because of their race *(see, Batson v Kentucky, supra,* at 96).

While no clear definition of a cognizable racial group has been stated by the United States Supreme Court, that Court has stated in the context of a challenge to the composition of a Grand Jury that such a group "is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied" *(Castaneda v Partida,* 430 US 482, 494, citing *Hernandez v Texas,* 347 US 475, 478-479). In a case where the record was silent as to the race or ethnicity of the excluded jurors, our Court of Appeals rejected a defendant's argument that, "regardless of race, 'minorities' in general constitute a cognizable racial group" *(People v Smith, supra,* at 876; *see also, People v Mathews, supra; People v Walker,* 196 AD2d 516; *People v Figueroa, supra).*

Under the circumstances of this case, however, application of the "cognizable racial group" standard in a manner which requires the party challenging the exclusions to demonstrate exclusion of a single, particular racial group, would permit a defendant to "stack" the jury with members of his own race to the exclusion of all others. As the Court of Appeals has noted, there is no longer any question that the racially motivated exercise of peremptory challenges is unconstitutional *(see, People v Jenkins,* 75 NY2d 550, 555). We find no support for the argument that it is acceptable for either party to use peremptory challenges in an attempt to impanel a jury comprised of a single race. It is no less discriminatory for a

defendant to exclude jurors because they do not share his or her race than for a prosecutor to exclude jurors because they do.

We must therefore conclude that it was sufficient in this case for the prosecution to establish that the defendant had exercised five peremptory challenges to exclude all but one of the remaining nonblack jurors from the panel of 16, and to state on the record the race or ethnic background of each excluded juror. Unlike *People v Smith* (81 NY2d 875, *supra)*, there is no claim here that the defendant excluded a vaguely defined group with no details in the record as to the races of those excluded. Contrary to the defendant's suggestion, there is no rule that a prima facie case of purposeful discrimination cannot be based on the pattern of strikes alone *(see, People v Bolling,* 79 NY2d 317, 324-325; *People v Mondello,* 191 AD2d 462, *supra)*. We therefore conclude that the prosecution established prima facie that the defendant improperly exercised his peremptory challenges in a racially discriminatory manner.

## B

After finding a prima facie case of purposeful discrimination, the Supreme Court properly requested that the defense counsel provide race-neutral, nonpretextual reasons for the challenges in question *(see, Georgia v McCollum,* 505 US —, —, 120 L Ed 2d 33, 51, *supra; Batson v Kentucky, supra,* at 97; *People v Simmons,* 79 NY2d 1013, 1015; *People v Kern, supra,* at 657-658). The determination of whether a given basis for challenging a juror is legitimate or pretextual often turns on issues of credibility, such that the trial court's determination is entitled to great deference *(see, Hernandez v New York, supra,* at 364-365; *People v Payton,* 204 AD2d 661).

The defendant contends that the reasons given by trial counsel were sufficient to require that the challenges be allowed. We disagree. A panelist's employment history may be a legitimate concern if the employment background is somehow related to the facts of the case *(see, People v Payton, supra; People v Williams,* 199 AD2d 445). In addition, a given reason for exclusion may generally be considered pretextual if it also applies to jurors who were not challenged *(see, People v Rodney,* 192 AD2d 626; *People v Manuel,* 182 AD2d 711; *cf., People v Dixon,* 202 AD2d 12).

Here, counsel based his peremptory challenges in part on panelist number two's "supervisory-type" position, and on

panelist number nine's employment with a large, "hierarchal and structured" organization. Not only do these employment backgrounds have no relation to the facts of this case, but there were panelists whom the defendant did not challenge who also worked in supervisory positions or for large, structured organizations.

Counsel also contended that panelist number two's prior civil jury experience might provide the basis for some confusion between civil and criminal law. As the trial court noted, however, an unchallenged black juror also had civil jury experience. The defendant argues for the first time on this appeal that the unchallenged juror also had criminal jury experience, and, therefore, undoubtedly understood the different standards to be applied. We find this argument untimely, as well as unpersuasive. The fact that the unchallenged juror had previously served on a criminal jury is no assurance that she successfully grasped the distinctions between civil and criminal law in the prior criminal case, and is in no way indicative that she was more capable than panelist number two of following the trial court's instructions in this case. We therefore find no basis to disturb the trial court's conclusion that the defense counsel's reasons for excluding panelists two and nine were pretextual.

## IV

For all of the foregoing reasons, we conclude that the trial court properly seated panelists two and nine. The defendant's remaining contentions are either unpreserved for appellate review or without merit. Accordingly, the judgment is affirmed.

RITTER, J. P., SANTUCCI and HART, JJ., concur.

Ordered that the judgment is affirmed.