[635 NYS2d 263]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MI-
CHAEL RICHIE, Appellant.

Second Department, December 18, 1995

## APPEARANCES OF COUNSEL

*Daniel L. Greenberg,* New York City *(Robert S. Dean* and *Philip L. Weinstein* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie* and *Thomas S. Burka* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

During the process of jury selection, once an objection pursuant to *Batson v Kentucky* (476 US 79) has been registered, the trial court must make at least one, and as many as three determinations:

1. whether the proponent of the *Batson* objection has made a prima facie showing of discrimination by adverse counsel in his or her exercise of peremptory challenges,

2. whether adverse counsel has, in response to the *Batson* objection, furnished nondiscriminatory explanations for his or her challenges, and

3. whether the proponent of the *Batson* challenge has carried his or her burden of proving purposeful discrimination.

In the present case, we focus on the third component of the tripartite analysis noted above, which has been adopted as a matter of Federal constitutional law in the recent case of *Purkett v Elem* (514 US —, 115 S Ct 1769; *see also, Hernandez v New York,* 500 US 352; *People v Allen,* 86 NY2d 101).

During jury selection, the defense counsel was called upon to provide nondiscriminatory explanations for his peremptory challenges to prospective juror number three, prospective juror number five, prospective juror number seven, and prospective juror number ten.

With respect to prospective juror number three, the defense counsel noted that this man had told of his aunt having been "slugged over the head". Counsel also noted that, in his opinion, this juror, as a "small landlord", would have a tendency to commiserate with the complaining witness, a "small businessman".

With respect to prospective juror number five, the defense counsel noted that this man had served on a jury in a criminal case which terminated as the result of a plea agreement. This experience, counsel believed, "could have * * * affected his outlook".

With respect to prospective juror number seven, the defense counsel noted that this man had been the victim of a robbery, as had been the complaining witness. The defense counsel also noted that this prospective juror had a family member who was employed in the Department of Correction, and that he had served on a jury three times.

With respect to prospective juror number ten, the defense counsel expressed the viewpoint that the neighborhood in which this juror resided, Marine Park, was "oriented toward law enforcement".

The defendant now argues that, as to the prospective jurors numbered three, five, and seven, the Supreme Court improperly overrode his peremptory challenges. We agree.

In *Purkett v Elem* (514 US —, 115 S Ct 1769, *supra)* the prosecutor in a State court criminal trial had asserted, in response to a *Batson* challenge *(Batson v Kentucky,* 476 US 79, *supra),* that he had exercised peremptory challenges against two black men because one had " 'long curly hair' " and another had " 'a mustache and goatee type beard' " *(Purkett v Elem,* 514 US, *supra,* at —, 115 S Ct, *supra,* at 1770). After his *Batson* claim had been rejected in the State courts *(see, State v Elem,* 747 SW2d 772 [Mo]), the defendant in *Purkett* filed a petition for a writ of habeas corpus in Federal District Court. The District Court declined to grant the writ. The Eighth Circuit Court of Appeals reversed and directed that the writ be granted *(Elem v Purkett,* 25 F3d 679), and the Supreme Court, in turn, reversed the order of the Circuit Court of Appeals, and remitted the case for further proceedings, stating:

"Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez v. New York,* 500 U.S. 352, 358-359, 111 S. Ct. 1859, 1865-1866, 114 L. Ed.2d 395 (1991) (plurality opinion): *id.,* at 375, 111 S. Ct., at 1874 (O'CONNOR, J., concurring in judgment); *Batson, supra,* at 96-98, 106 S. Ct., at 1722-1723. The second

step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' *Hernandez,* 500 U.S., at 360, 111 S. Ct., at 1866 (plurality opinion); *id.,* at 374, 111 S. Ct., at 1874 (O'CONNOR, J., concurring in judgment).

"The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.,* a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected. 25 F.3d, at 683. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. *Batson, supra,* at 98, 106 S. Ct., at 1723; *Hernandez, supra,* at 359, 111 S. Ct., at 1865 (plurality opinion). At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. Cf. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509-510 (1993)" *(Purkett v Elem,* 514 US, *supra,* at —, 115 S Ct, *supra,* at 1770-1771).

In accordance with the foregoing, the question of whether a purportedly nondiscriminatory explanation which has been offered to justify a peremptory challenge is or is not "pretextual" is one which is to be considered as part of what in the *Purkett* schematic is labeled as "step three" *(see, People v Allen,* 86 NY2d 101, *supra; see also, State v Gaitan,* 536 NW2d 11, 15, n 2 [Minn]; *State v Gill,* 460 SE2d 412 [SC]; *People v Nunn,* 273 Ill App 3d 519, 652 NE2d 1146). The question remains: when should a facially neutral explanation be branded as pretextual?

There is a wealth of case law in which we stress the advantage the trial courts have in making determinations of this nature *(see, e.g., People v Pollard,* 219 AD2d 737;

*People v Jones,* 213 AD2d 677; *People v Payne,* 213 AD2d 565; *People v Jupiter,* 210 AD2d 431; *People v Stiff,* 206 AD2d 235; *People v Dixon,* 202 AD2d 12; *People v Bailey,* 200 AD2d 677; *People v Mondello,* 191 AD2d 462). Obviously, in a case where counsel advances, as a reason for his or her challenge, anything relating to the potential juror's appearance (hair length, clothing, etc.), the trial court has a distinct and perhaps insurmountable advantage because an appellate court cannot see what the potential jurors looked like or wore. But the trial court does not have a similar advantage where the explanation offered concerns a juror's statements relating to his or her profession or background. It would not, in our view, be acceptable for this Court to invoke the rule providing for deference to the trial court in matters of credibility in order to rubber stamp every determination relating to the legitimacy of a peremptory challenge. Such an approach would, in the long run, make claims of *Batson* error impervious to appellate review.

Another approach would be for the appellate courts to categorize those factors which lend themselves, in a particular way, to use or misuse as pretexts for discrimination in jury selection. We have essentially done this with at least one factor, i.e., the profession or employment of potential jurors, by holding that, unless related to the facts of the case, the nature of a juror's employment or profession is not a legitimate basis upon which to exclude him or her from the jury *(see, People v McMichael,* 218 AD2d 671; *People v Stiff, supra).* In addition to recognizing certain factors particularly likely to constitute pretexts, the appellate courts have also recognized other factors which the trial courts should be hesitant to regard as pretexts. In cases of claims of discriminatory conduct by defense counsel, for example, the fact that a juror has been the victim of a crime should generally not be regarded as pretextual *(see, People v Velasquez,* 213 AD2d 505; *People v Martinez,* 207 AD2d 807; *People v Dixon,* 202 AD2d, *supra,* at 18; *cf., People v Jupiter,* 210 AD2d 431, *supra).*

We perceive a major risk in this attempt to categorize certain factors (e.g., employment status) as presumptively pretextual, and other factors (e.g., crime victim status) as presumptively nonpretextual. The risk is that, as these categories proliferate, *Batson* jurisprudence will become unacceptably complex and cumbersome. We emphasize that, while such categories may be useful, they will not be determinative. There may be cases in

which crime victim status is properly found to have been used as a pretext *(e.g., People v Jupiter, supra),* and there may be other cases in which employment status is properly found to have been used legitimately as an explanation for a peremptory strike. The determination as to whether a given explanation is or is not pretextual will also depend on a variety of factors, including:

1. Whether the reason proffered by the party exercising the peremptory challenge relates at all to the facts of the case,

2. The extent to which the party exercising the peremptory challenge actually questioned the proposed juror,

3. Whether particular questions were asked of only one group of jurors, and not of others,

4. Whether a particular reason was applied to only one group of jurors, and not to others,

5. Whether the reason proffered was based upon "hard data" or was purely intuitive.

Under all the circumstances of the present case, we conclude that the People did not meet their burden of showing that the defendant's challenges were motivated by race-based or gender-based discrimination. The explanations based on crime victim status, familial relationship to a correction officer, or prior jury service are not "pretextual on their face" *(People v Dixon,* 202 AD2d, *supra,* at 18) and are not "implausible", "silly", or "superstitious" *(Purkett v Elem,* 514 US, *supra,* at —, 115 S Ct, *supra,* at 1771). That there was less than complete uniformity in the application of these factors does not establish that these factors were pretextual *(see, People v Allen,* 86 NY2d 101, *supra; cf., People v Watson,* 216 AD2d 596).

While we recognize that the lack of clear-cut rules in the area may lead to disparate results, the necessity of determining whether a peremptory challenge is pretextual requires that we employ such methodology as results in a seemingly fair resolution.

Accordingly the judgment must be reversed, on the law, and a new trial ordered.

SULLIVAN, FRIEDMANN and KRAUSMAN, JJ., concur.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.