■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON JONES, Appellant. [720 NYS2d 509] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Eng, J.), rendered December 17, 1997, convicting him of sodomy in the first degree, sexual abuse in the first degree (two counts), and endangering the welfare of a child, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of various crimes including, *inter alia,* sodomy and sexual abuse. The defendant claims that the trial court's denial of the second of two peremptory challenges warrants reversal of his conviction. We disagree.

The defendant elected to proceed *pro se* with the assistance of a legal advisor. In the second round of jury selection, the defendant sought to peremptorily challenge a white male potential juror. However, the challenge was denied after a successful challenge by the People pursuant to *Batson v Kentucky* (476 US 79) and *People v Kern* (75 NY2d 638). Immediately thereafter, the defendant's legal advisor announced in open court that the defendant needed to exhaust his remaining peremptory challenges in order to preserve his right to appeal the court's ruling. That statement was incorrect (*cf.,* CPL 270.20 [2]). However, relying on the incorrect advice, the defendant peremptorily challenged the very next potential juror to be considered. It is this challenge that is the focus of the appeal. When asked by the court to state his race-neutral reason for the challenge, in response to the People's allegation of a *Batson-Kern* violation, the defendant asserted that he was merely exhausting his peremptory challenges in order to "protect [his] rights under the *Batson* case" to appeal the court's earlier ruling. Indeed, as is made clear by the colloquy, this was the sole basis of the challenge. From this colloquy, it is clear that no *Batson-Kern* issue was implicated and the court should have excused the juror pursuant to the defendant's peremptory challenge. Thus, the denial of the challenge pursuant to a *Batson-Kern* analysis was error. However, while this error does not raise a *Batson-Kern* issue, we need not ignore the substance of what occurred. The error that occurred was, at most, an improper denial of a peremptory challenge. Further, on the facts presented, the error was harmless.

Other than the constitutional concerns implicated under *Batson*, the right to exercise a peremptory challenge is strictly statutory and not of constitutional dimension (*see, People v Kern, supra*). Nonconstitutional error may be deemed harmless whenever the properly admitted evidence is overwhelming and there is no "significant probability" that the jury would have acquitted the defendant had it not been for the error or errors which occurred (*see, People v Ayala,* 75 NY2d 422, 431; *People v Crimmins,* 36 NY2d 230). The case cited by the dissent, *People v McGee* (76 NY2d 764), is not to the contrary. Here, the evidence of the defendant's guilt was overwhelming and there is no significant probability that the defendant would have been acquitted had it not been for the seating of the juror at issue. The verdict was not rendered by a juror who demonstrated any bias, or against whom the defendant had a genuine objection. Contrary to the opinion expressed in the dissent, this does not require us to "second-guess" the defendant's intent in challenging the juror. Rather, his intent was made clear during the col-

loquy that followed the challenge. There is no evidence that the defendant's challenge was motivated by any reason other than that stated: that is, his (mistaken) belief that he needed to exhaust his peremptory challenges in order to preserve his right to appeal the court's earlier *Batson-Kern* ruling. Moreover, the defendant received all that he sought in challenging the juror, i.e., appellate review of the court's earlier ruling. In sum, no *Batson-Kern* analysis is implicated and, on the facts presented, any error in denying the defendant's peremptory challenge was harmless.

The defendant's remaining contention regarding the prosecutor's *Batson-Kern* objection to the defendant's peremptory challenge of the white male juror is without merit. Ritter, J. P., Santucci and Feuerstein, JJ., concur.

Goldstein, J., dissents, and votes to reverse the judgment appealed from, on the law, and to order a new trial, with the following memorandum: The defendant in the instant case proceeded *pro se* with an attorney advisor. During the course of jury selection, the prosecutor claimed that the defendant was using his peremptory challenges to exclude white male prospective jurors (*see, People v Kern,* 75 NY2d 638, 649-650; *see also, Batson v Kentucky,* 476 US 79). The court found that the prosecutor made a prima facie showing of discrimination against white males, and asked for race-neutral reasons for the defendant's exercise of a peremptory challenge against a white male juror. The defendant noted that "I didn't like the way [the juror] was looking at me," and further noted that the juror said that one witness could be better than a thousand. The court noted that the juror had said "one witness who was telling the truth is better than 100 witnesses who are lying" which was "completely compatible with the instructions that I gave about evaluating the quality of testimony." The court further found that "there is nothing at all meritorious regarding looks, expressions, or any other point raised by the defense" and seated the juror.

Thereafter, the defendant's legal advisor noted on the record that "the prosecutor put the defendant in a position, in order to protect the record with respect to his *Batson* issue, he has to exercise all his remaining perempts [*sic*]." The court responded "I am not following that." The court further stated that the legal advisor had "no standing to speak."

During the next round of jury selection, the defendant peremptorily challenged a white female prospective juror. The prosecutor objected, arguing that the defendant was discriminating against white people as a group. The court found that

the prosecutor made a prima facie showing of purposeful discrimination against white people, and asked the defendant to articulate a race-neutral reason for the challenge.

The defendant replied "Your Honor, in order to protect my rights for appeal or otherwise, the *Batson* issue * * * I would like to use up all my challenges." The prosecutor responded "he hasn't given any race neutral reason. That is absolutely pretextual." The defendant noted that he wanted to use up all his challenges, and the court replied "I am not following you. You want to exercise all your challenges; what does that mean?" The defendant responded "I am not dismissing them because of racial reasons, I am, like I asked my advisor to say * * * I want to protect my rights under the *Batson* case." The court found that the defendant had not articulated a race-neutral explanation for striking the juror, and seated her.

In determining whether the exercise of peremptory challenges is infected by purposeful discrimination, the trial court must engage in a three-step process. Initially, the party contesting the peremptory challenges, in this case the prosecutor, must make a prima facie showing that the peremptory strikes are related to the race of the jurors sought to be removed. If that threshold showing is met, the party exercising the peremptory challenges, in this case the defendant, must voice race-neutral reasons for striking the jurors in question (*see, People v Payne,* 88 NY2d 172, 181). Unless the discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral (*see, People v Allen,* 86 NY2d 101, 110). So long as the proffered explanation appears to be race-neutral, the prosecutor bears the burden of establishing purposeful discrimination (*see, People v Allen, supra,* at 110). To be considered race-neutral, the proffered reason need not be persuasive or even plausible (*see, People v Allen, supra,* at 110).

In the instant case, the defendant's reason for challenging the white female juror was, on its face, race-neutral. Further, it is apparent that, as a result of inaccurate legal advice from his advisor, the defendant was under the mistaken impression that he was required to exhaust all peremptory challenges in order to obtain appellate review of the disallowance of his peremptory challenge to a white male juror. Neither the court nor the prosecutor sought to correct this mistaken impression. Nor did the prosecutor attempt to satisfy his ultimate burden of establishing purposeful discrimination. The court merely found the reason for challenging the white female juror was pretextual on its face, because there was no legal basis for the

defendant's statement that he had to exhaust all peremptory challenges in order to preserve his *Batson* issue for appellate review. "The court's rejection of the subject challenge, absent any further proffer by the prosecutor that the reason was pretextual, deprived the defendant of his right to a jury of his choice" which mandates reversal of the defendant's conviction (*see, People v Miranda,* 220 AD2d 459; *People v Richie,* 217 AD2d 84; *People v Bennett,* 206 AD2d 382).

My colleagues in the majority find that this error does not warrant reversal. The basis for their finding appears to be that the defendant's exercise of a peremptory challenge against the female prospective juror was not genuine. The defendant had no real objection to the juror, and was merely trying to exhaust all peremptory challenges in the mistaken belief that this was a prerequisite to appellate review of the disallowance of his challenge to the white male prospective juror. The majority seems to concede that this challenge was not shown to be motivated by any bias. Indeed, they consider it a normal peremptory challenge to a juror the defendant did not want.

The majority asserts that the denial of a peremptory challenge for nonconstitutional reasons may constitute harmless error if there is no "significant probability" that the jury would have acquitted the defendant had it not been for the error or errors which occurred (*see, People v Ayala,* 75 NY2d 422, 431). However, that principle applies to evidentiary rulings. It is not the function of the court to second-guess whether a party exercising a peremptory challenge has a genuine or legitimate interest in striking the juror: a peremptory challenge "is an objection to a prospective juror for which no reason need be assigned" (CPL 270.25 [1]; *see, People v Miranda, supra*). Therefore, the question of whether the defendant was deprived of a peremptory challenge for a constitutional or nonconstitutional reason is irrelevant. Depriving the defendant of a peremptory challenge to which he is entitled violates the defendant's right to a jury of his own choosing (*see, People v McGee,* 76 NY2d 764). Such an error cannot be deemed harmless (*see, People v McGee, supra; People v Roberts,* 215 AD2d 148). In the instant case, the defendant was deprived of the 15 peremptory challenges to which he was entitled (*see,* CPL 270.25 [2] [b]), and therefore was deprived of a substantial right (*see, People v Hamlin,* 9 AD2d 173).

Since the prosecutor failed to establish that the peremptory challenge to the white female juror was motivated by racial discrimination, it should have been allowed. The seating of the juror mandates reversal of the judgment of conviction (*see,*

*People v Richie, supra).* Accordingly, the judgment should be reversed and a new trial ordered.